Argued 4 December; decided 31 December, 1900.

**DURKEE v. CARR.**

[63 Pac. 117.]

IMPLIED AUTHORITY OF AGENT.

1. A grant of power to an agent, where no limitations are apparent, carries with it authority to do what is proper, usual, necessary and reasonable to effectuate the object of the agency; and acts of the agent beyond the power thus implied are not binding on the principal.

COVENANT IN LEASE — AUTHORITY OF AGENT.

2. The fact that a landowner directed his agent to lease certain lands,

reserving a share of the crop as rent, does not authorize the agent to covenant in a lease of such lands to irrigate the leased property, it not appearing that it was necessary to insert such a covenant in order to lease the land, or that it was customary for landowners in that vicinity to insert such covenants in leases of that kind of land.

Presumption of Injury From Error.

3. Where error affirmatively appears it will be presumed that it was prejudicial, unless the contrary appears from the record: *Carney* v. *Duniway*, 35 Or. 131, applied.

Limit of Implied Power of Agent.

4. The implied authority of an agent does not extend to what is necessary to execute the power conferred, but is limited to what is proper, usual, and reasonable, as well as necessary.

Defective Statement — Waiver by Answering.

5. In an action on a covenant in a lease to irrigate the demised premises from a specified ditch "where practicable," failure of the complaint to aver the extent thereof capable of being practicably irrigated is a defective statement curable by motion to make more definite and certain, and hence is waived by answering over: *Drake* v. *Sworts*, 24 Or. 198, cited.

Pleading Performance of Contract — Waiver.

6. In an action of damages for breach of a contract an allegation that plaintiff "in all respects has lawfully executed and complied with the contract on his part, in so far as he was allowed so to do by defendant's agent," is a sufficient, though informal, statement that defendant had waived the performance of the conditions of the agreement, and the objection was waived by answering over: *Fisk* v. *Henarie*, 13 Or. 156, cited.

From Klamath: Henry L. Benson, Judge.

This is an action by Geo. A. Durkee against Jesse D. Carr to recover damages for the breach of an alleged contract. It is substantially averred in the complaint that on May 15, 1898, the defendant, by J. F. Adams, his authorized agent, demised to plaintiff for the term of five months 200 acres of arid land in Klamath County, Oregon, and in the written lease covenanted that he would, free of charge, construct all main ditches to and upon the premises, and furnish sufficient water from the Little Klamath Water Ditch properly to irri-

gate the same where practicable, in consideration of which the plaintiff agreed to plow and sow the land, chiefly to wheat, and to deliver one-fourth of the grain raised, as rent therefor; that in pursuance of the lease the plaintiff entered into possession, plowed and sowed 185 acres thereof to wheat and barley, and in all respects fully complied with his part of the contract in so far as he was allowed to do so by defendant's said agent; but defendant, though often requested so to do, neglected to furnish any water for irrigation, thereby rendering it impossible to raise a crop on such land, to plaintiff's damage in the sum of $1,826.87. A demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action having been overruled, an answer was filed, denying the material allegations of the complaint, and a trial being had, resulted in a verdict and judgment for plaintiff in the sum of $1,090, and the defendant appeals.                    REVERSED.

For appellant there was a brief over the names of *John S. Orr, Chas. A. Coggswell,* and *J. W. Hamaker,* with an oral argument by *Mr. Coggswell.*

For respondent there was a brief over the names of *Hiram F. Murdock* and *Austin S. Hammond,* with an oral argument by *Mr. Hammond.*

MR. JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

It is contended by defendant's counsel that the testimony was insufficient to establish Adams' authority to execute, as defendant's agent, the covenant to furnish water, and hence the court erred in admitting the lease in evidence over their objection and exception. The testimony shows that the defendant owns a section of land in said county, incapable of producing grain without irrigation; that in the spring of

1898 he caused it to be prepared for cultivation by grub-
bing up the sagebrush growing thereon; that, being a resi-
dent of California, he wrote to Adams, requesting him to
lease said land to be sowed to grain, reserving for rent such
a share of the crop to be raised as he might think proper, but
did not suggest that any water should be furnished for irri-
gation.    In pursuance of such correspondence Adams ex-
ecuted, in the defendant's name, a written lease to plaintiff,
containing the following stipulation: "The party of the first
part covenants and agrees to furnish water from the Little
Klamath Water Ditch sufficient to properly irrigate said
tract, where practicable, and to construct all main ditches
for conveying said water to and upon said tract, free of
charge."    Adams also leased other parts of said section to
Thomas Bailey, R. C. Anderson, Thomas Roberts, and Bert
Davis, respectively, who entered into possession thereof
under leases containing a like covenant.    In May, 1898, the
defendant visited said land, saw the wheat growing thereon,
and knew that it had been leased, but until about July or
August of that year he had no knowledge of the existence
of such covenant.    J. F. Adams, as plaintiff's witness, on
cross-examination, testified that he had no authority from the
defendant to agree to furnish water to the plaintiff or other
lessees for irrigation.

1.    The foregoing is a fair summary of the testimony re-
specting Adams' authority to execute the covenant relied
upon, and, while the bill of exceptions does not purport to
contain all the testimony given by the witnesses, the court
certifies that, except so far as it can be inferred from the arid
character of the land, no evidence was introduced to show
that it was necessary to agree to furnish water for the irriga-
tion in order to effect a lease of the premises, or that it was
a custom in that vicinity for landlords to furnish water to
their tenants to irrigate the premises leased, or that the plain-
tiff had any knowledge of Adams' instructions to lease the

land, or that the latter had ever acted as defendant's agent, or was held out by him as having authority to execute a covenant to furnish water for irrigation, except as the execution of the leases of other parts of said section might lead to such an inference. Adams' power to lease the premises having been admitted, the question presented for consideration is whether the testimony adverted .to is sufficient to establish his authority to agree on behalf of his principal to furnish water to the plaintiff, to be used in irrigating the land so leased. The rule is elementary and universal that every grant of power by a principal to his agent, where no limitations are apparent, is to be construed as carrying with it, as an incident thereto, the authority to do all things proper, usual, necessary, and reasonable to carry into effect the objects and purposes sought to be accomplished by the authority conferred: 1 Am. & Eng. Enc. Law (2 ed.), 997; Mechem, Ag., § 311; Story, Ag. (9 ed.), § 60; Wharton, Ag., § 126. But stipulations in a lease executed by an agent whose authority therefor is not reasonably implied in the power delegated are not binding upon his principal. Thus, in *Halbut* v. *Town of Forrest City,* 34 Ark. 246, it was held that a power conferred upon an agent to lease certain premises did not authorize him to covenant on behalf of his principal to repair or rebuild a house thereon in case of its injury or destruction by fire. In *Loftin* v. *Crossland,* 94 N. C. 76, it was held that a married woman, having appointed her husband to lease her land, was not bound by his attempt to subject the rents accruing therefrom to a lien for agricultural supplies advanced to the tenant. In *Schumacher* v. *Pabst Brewing Co.,* 78 Minn. 50 (80 N..W. 838), it was held that an agent who was authorized to negotiate a lease for three years had no authority to execute one for that term with a privilege to the lessee of a renewal for two years more after the expiration of the

38 Or.—13.

original term. So, too, in *Borderre* v. *Den,* 106 Cal. 594 (39 Pac. 946), it was held that an agent authorized to lease a tract of land for one year at $600 could not bind his principal by a lease of a part thereof at $225 for a term exceeding one year.

2. The letter which authorized the leasing of the premises not having been produced, the contents thereof were established by Adams, who, as defendant's witness, testified that he was thereby requested to rent the land for such a share of the crop as he might think proper, and to furnish money to buy grain to seed the place, if necessary, taking a mortgage on the crop to be grown thereon as security therefor. The authority conferred being evidenced by an informal writing, which is not subject to a strict construction, the power to be implied therefrom ought not to be extended beyond the scope necessary to carry into effect that which is expressly granted. If it had appeared from the evidence that it was the well-known and general custom of landlords in the vicinity of the premises so leased to furnish to their tenants water for irrigation, so that the plaintiff, in dealing with Adams, might have reasonably inferred that he possessed plenary power to execute a lease with a covenant to that effect, the verdict of the jury, given in pursuance of proper instructions upon the subject, would have freed the inquiry from doubt *(Wright* v. *Solomon,* 19 Cal. 64, 79 Am. Dec. 196; *Corbett* v. *Underwood,* 83 Ill. 324, 25 Am. Rep. 392; *Randall* v. *Kehlor,* 60 Me. 37, 11 Am. Rep. 169; *Rosenstock* v. *Tormey,* 32 Md. 169, 3 Am. Rep. 125; *Mixer* v. *Coburn,* 11 Metc. [Mass.] 559, 45 Am. Dec. 230) ; for every contract is presumed to have been made with reference to the well-defined and publicly known customs and usages of the section of the country in which the terms of the agreement are to be performed, and these customs and usages, in the absence of anything to indicate a contrary intent, enter into and become a part of all contracts, though not partic-

ularly specified therein: Mechem, Ag., § 281; *McCulsky* v. *Klosterman,* 20 Or. 108 (25 Pac. 366, 10 L. R. A. 785); *Holmes* v. *Whitaker,* 23 Or. 319 (31 Pac. 705). In the absence of any proof of such general custom, if it had appeared from the testimony introduced at the trial that it was Carr's habit in leasing land to furnish water to his tenants for irrigation, and that such habit was well known to the plaintiff, who, from the execution of a covenant to that effect, might have reasonably inferred that Adams possessed the requisite degree of power in this respect, the lease would probably have been admissible in evidence: *Wilcox* v. *Chicago, etc. Ry. Co.,* 24 Minn. 269; *Graves* v. *Horton,* 38 Minn. 66 (35 N. W. 568); *Olcott* v. *Tioga R. R. Co.,* 27 N. Y. 546 (84 Am. Dec. 298); *McAlpin* v. *Cassidy,* 17 Tex. 449.

The bill of exceptions shows that in 1898 Adams, as defendant's agent, leased land to other tenants, with whom he covenanted that his principal would furnish water for irrigation. The testimony does not show, however, that these leases were entered into before plaintiff's, so that it might have been inferred from the execution of the power that Adams had authority to covenant upon behalf of his principal to furnish water to his tenants for irrigation; but, inasmuch as it appears that the defendant had no knowledge of the execution of these covenants until July or August of that year, the testimony, in our judgment, was insufficient to show that Adams had been held out to the public as possessing sufficient power to execute a covenant to furnish water for such purpose. In the absence of any proof of the principal's habit of ratifying the unauthorized acts of his agent, no reason exists upon which to predicate a rule that the principal should be bound by such unauthorized act because his agent, without his knowledge, exceeded his power in more than one instance.

3. The bill of exceptions not purporting to contain all

the evidence given at the trial, if any testimony was introduced tending to prove the defendant's habit in leasing land to furnish water to his tenants, or that it was his custom to ratify all agreements entered into on his behalf by Adams, the plaintiff should have secured the court's certificate to that effect, or incorporated such testimony in the bill of exceptions; for, while error will not be presumed *(O'Kelly* v. *Territory,* 1 Or. 51; *State* v. *Garrand,* 5 Or. 216), nevertheless, when it is manifest, prejudice is presumed, unless the bill of exceptions affirmatively shows that no injury could have resulted therefrom: *Inverarity* v. *Stowell,* 10 Or. 261; *Du Bois* v. *Perkins,* 21 Or. 189 (27 Pac. 1044); *Nickum* v. *Gaston,* 24 Or. 380 (33 Pac. 671, 35 Pac. 31); *Cleveland Oil Co.* v. *Norwich Ins. Society,* 34 Or. 228 (55 Pac. 435); *Carney* v. *Duniway,* 35 Or. 131 (57 Pac. 192, 58 Pac. 105). The error being apparent, and the record not affirmatively showing that injury did not result therefrom, the court erred in admitting the lease in evidence.

4. The court, over defendant's objection and exception, charged the jury as follows: "I therefore instruct you that in making the lease Mr. Adams acted as the agent of the defendant, Jesse D. Carr, and that in making said lease Adams had authority to do whatever was necessary to accomplish that object," and it is contended that an error was committed in this respect. We think the instruction is erroneous, because the court extended the agent's authority to whatever was necessary to the execution of the power, when it should have limited such authority to that which is "proper, usual, and reasonable," as well as necessary. Fertile soil, balmy atmosphere, and genial sunshine are great factors in producing and maturing successful crops, to accomplish which, in the arid region, water is necessary for irrigation. But the cost of securing it for that purpose may be so great as to render its use neither proper, usual, nor reasonable. The necessity for the use of water for irrigation by the plain-

tiff may be reasonably inferred from the arid character of the land leased, but unless it was usual, proper, and reasonable for a landlord, in that vicinity, to furnish water to his tenants for that purpose, necessity alone would be insufficient to confer upon an agent implied power to covenant so as to bind his principal to furnish water; for, while the land was leased to be sowed in grain, it is possible that, in consequence of a rainy season, the grain might be profitably matured without moisture supplied by artificial means. The authority of an agent to enter into a contract so as to bind his principal thereby cannot always be implied from necessity alone. Thus, in *Hawtayne* v. *Bourne*, 7 Mees. & W. 595, the laborers employed in a mine, not having received their wages, secured warrants of distress upon the materials belonging to the mine, whereupon an agent engaged to operate the mine obtained from a bank a loan of money, which he used in paying the claims of said laborers; and, in an action against the principal to recover on account of the loan, the judge charged the jury that, although under ordinary circumstances an agent could not, without express authority, borrow money in the name of his principal so as to bind him, yet, when it becomes absolutely necessary to raise money in order to preserve the property of the principal, the law would imply authority in the agent to do so to the extent of the necessity, and left it to the jury to say whether the pressure superinduced by the action of the laborers was sufficient to render the advance of money a case of such necessity; and, the jury having found for the plaintiff, a new trial was awarded on appeal, the court holding that an agent of the character indicated had no authority to borrow money on account of his principal in any case of necessity, however pressing. In the absence of the limiting words to which attention had been called, we think the court erred in giving the instruction complained of.

5. In view of another trial, it becomes important to con-

sider some questions which may arise in the lower court for consideration. It is contended by defendant's counsel that, the lease having stipulated that the defendant would furnish sufficient water to properly irrigate the premises where practicable, the complaint did not state facts sufficient to constitute a cause of action, in failing to allege that the land so sowed to grain could have been practically irrigated from the Little Klamath Water Ditch, and hence the court erred in overruling the demurrer, while plaintiff's counsel insist that the failure of the plaintiff in this respect constitutes a defective statement only, which the defendant waived by answering over after the demurrer was overruled. The lease, having stipulated that the defendant would furnish water from said ditch to irrigate the premises "where" practicable, implies that a portion thereof, at least, was susceptible of irrigation from the source specified. Had the memorandum stated that the water would be supplied to irrigate the land "if" practicable, the necessity of alleging that the premises so sowed to grain could have been irrigated by water taken from said ditch becomes apparent. It being reasonably inferable from the lease, which is set out in the complaint, that a part of the premises could have been irrigated in the manner indicated, the failure of the plaintiff to aver the extent thereof which was capable of being practicably irrigated was a defective statement, which could have been cured by a motion to make more definite and certain, and any failure in this averment was waived by answering over to the merits : · *Olds* v. *Cary,* 13 Or. 362 (10 Pac. 786) ; *Drake* v. *Sworts,* 24 Or. 198 (33 Pac. 563).

It is also claimed that the court erred in overruling the demurrer because the complaint fails to allege that any demand was made upon the defendant to furnish water for irrigation. The point contended for, however, is without merit; for it is averred in the complaint "that the defendant

totally failed to furnish or supply any water whatever upon said premises, though often requested to do so."

6.  It is maintained that the complaint is insufficient because it does not allege that the plaintiff substantially complied with or performed the parts of the contract assumed by him. It is argued that the averment that plaintiff "in all respects has lawfully executed and complied with the contract on his part in so far as he was allowed so to do by defendant's agent, said J. F. Adams," is an admission that he' has not fully performed his part of the agreement, and, there being no averment that Adams acted as defendant's agent in preventing a compliance with the terms of the contract, or that any action on his part prevented plaintiff's performance thereof, the court erred in overruling the demurrer. The rules of the common law respecting the allegation of the performance of a condition precedent have been changed by our statute so as to permit a party to plead generally that he has duly performed all the conditions imposed upon him by his agreement: Hill's Ann. Laws, § 87. But, when he relies upon a waiver of such performance by the adverse party, he should aver the fact, so as to let in the evidence thereof: *Long Creek Bldg. Ass'n* v. *State Ins. Co.,* 29 Or. 569 (46 Pac. 366) ; *Hannan* v. *Greenfield,* 36 Or. 97 (58 Pac. 888). The plaintiff alleges in his complaint a waiver of the performance of the conditions of the agreement, and while, perhaps, the averment of the fact relied upon is not so specific as it might have been, any defect therein was undoubtedly cured by answering thereto: *Fisk* v. *Henarie,* 13 Or. 156 (9 Pac. 322). In consequence of the error of the court in admitting the lease in evidence and in giving the instruction complained ˙of, the 'judgment is reversed and a new trial ordered.    REVERSED.